The next argued case is No. 2011-5131, Locane v. Health and Human Services. Mr. Shoemaker. Thank you, Your Honor. May it please the Court, Clifford Shoemaker for the petitioner-appellant, Jennifer Locane. Your Honor, this is a case involving a special master who used a fact determination to supplant and replace a proper often capizano determination of this case. This case involved whether or not hepatitis B vaccinations- Mr. Shoemaker. Sir. In the memorandum of opinion and order by Judge Miller, the Court says-this is going to be a little bit of a long one-the Court is mindful that it was only due to the special master's generosity affording the petitioner every opportunity to make an argument that the record was expanded to include petitioners' alternate and less preferred theory of significant vaccination. And then there's a whole bunch of cites to all these places, and I looked in the record, and indeed, over the months from August through October, you'd get opportunities to file braids and so on. What exactly did the Court of Federal Claims grant on August 28th and 29th, and what did Locane submit in response? I'm not sure what we're referring to on August 28th and 29th. Well, August 28th and October 29th in the record, you're permitted to supplement the- I think that's probably referring to Dr. Belanti's supplemental brief and also Dr.-we had a gastroenterologist who also submitted a supplemental brief. So I assume that's what that's referring to, right? Okay. So that's what the supplementation- And it's a good point to start on because let me just explain that there was no reason for us to think that this was a case of significant aggravation because there was no evidence from the facts that our experts looked at. And let me bear in mind that our experts are in agreement with all the treating physicians. This child had a treating pediatric gastroenterologist. The issue in the case was an immunological issue, and that is causation. Everybody admits that Crohn's disease is an immune-mediated condition. So if we're talking about how to treat Crohn's disease, then a gastroenterologist is the proper person to talk to. Following up on Judge Wallace's question, is it your position that the aggravating circumstance issue is not-you're really not pursuing that part of the case? Well, we are now because the court-what I am doing is an alternate because what we're saying is when we originally pursued this case, we had no reason to think there was an alternate causation. This lady had no diarrhea. We know all of that, but where are you now on the question of aggravation? Because your record is very thin. That's what Judge Wallace is trying to probe a little bit. Your record on that issue is very thin. Well, I don't think it is, Your Honor, because Dr. Bilanti pointed out-and incidentally, when you're talking about causation, you're talking about immunology. You're talking about Dr. Bilanti, who is the director of the Immunology Center at Georgetown University, who's just come out with the fourth edition of his textbook on immunology. So if we're talking about treating Crohn's disease, that's important for a gastroenterologist. If we're talking about proving causation from a vaccine, we're talking about an immunologist, to be clear. Everybody agrees. The pediatric gastroenterologist that treated this child, the pediatrician that treated this child, have never, ever said that this child had Crohn's disease prior to that first vaccination. That's never been said by any treating doctor. The facts are the facts. What the special master relied upon was the opinion of Dr. Warner. He's the only one with this opinion, that the Crohn's disease may have started earlier. He admits that that's based on subtle medicine. He admits it's based on a couple articles that he presented in evidence. One of the articles said that you had to have showings of-and it talked about the weight loss was anywhere from 9 pounds to 16 or 17 pounds. In this case, we were dealing with a child who went from 83 pounds, 82 and a half pounds. Then, at a time when she had a urinary tract infection, she went to 80 pounds. Then she went back up to 82 pounds. Then she went up to 88 and a quarter pounds before she got the vaccination. So, did her weight drop by 2 or 3 pounds? Yes. Is that unusual? No. She had a UTI at the time when she was the lowest weight. What clothes was she wearing when she was weighed? Most of the dates that she went in, she wasn't even weighed. And the point of the matter- That's all on the record. That's all on the record. If you look at the weights on A842, on October 14, 1994, she weighed 83 pounds. Well, if you look at the percentile of weight records from 1993 to 1997, she went from 50th to 40th to 25th to 18th to 15th to 12th to 10th on August 1997, before the first hepatitis. She was going downhill. There was nothing wrong with her. She was an athlete. She was competing. She had no problems. This is a healthy girl. She had no diarrhea. She had no blood in the stool. She had no vomiting. She had no nausea. She didn't have any of the symptoms of Crohn's disease. Did you refer me to A842? I'm sorry. I'm sorry. Appendix 842. I'm sorry. I'm sorry. Actually, the weights are 842 through 846. And the point being that by the time she got the shot, she had gone back up in weight. So did she go down a little bit in weight? Yes, she dropped three pounds. But the relevance of that simply is that the government doctor had some basis for an opinion. And I accept the fact that you think his opinion is worthless and that the treating doctors never found Crohn's. I accept all of that. The question, though, is given our standard of review, can we really say that the special master was crazy, just arbitrary, capricious, without any basis for going anywhere? We have a standard of review that gives you a very high hurdle, I'm sorry to tell you. I understand that. You understand that? I appreciate that. Okay. But I think that we have to understand what's happening in the claims court, Your Honor. And as someone who's been involved in this program from the very beginning, it troubles me that after Alton and after Capozano and Alton, we seem to now be getting into an era of trying to find the ways to overturn or defeat petitioner's claims using facts. The facts are the facts, but that's not what the special master used. He used opinion about those facts. The facts are the weights. What that means is based upon the opinion of their doctor. That opinion is versus the pediatric gastroenterologist who treated her. It's against the gastroenterologist that we had filed an opinion. It's against Dr. Volante's opinion. Dr. Volante said, sure, that might have, you know, that can be. You can have weight loss as an early symptom of this condition. And your view is no reasonable special master could possibly have believed the government's doctor. My view is that the special master in this case was trying to substitute what's generally accepted in the medical community, which is something which Alton does not require anymore. He's trying to put that into this case. So he's injecting requirements that were removed in Alton back into the case by relying on the opinion of one expert. Why? Because he's treated more cases of Crohn's disease? I mean, that's not, that's an impossible burden for petitioners to meet in this program. If every case we can look back and say, well, that child or that baby had a funny twitch of the arm when it was three years old, therefore that was the onset of symptoms, and some doctor comes in and says it, the fact is there, but the opinion is what I'm appealing here. The opinion was without adequate facts.  The special master and the court of claims both thought that the treating doctors were not really looking for Crohn's disease because it's such an unusual kind of symptomology. And that therefore it's understandable that there's no record from the treating doctors of a diagnosis, although one of the doctors I think had said there's some suspicion or something. What's wrong with that point? Because the pediatric gastroenterologist who had the records and reviewed them at the time filed a various claim saying this was a suspected vaccine reaction. He attributed the onset, he said the onset was after August of 1997. I mean, he gave the onset. So if we get past this issue, first of all, I don't think there was an onset prior to it, but even if you say that this losing three pounds and then regaining, going back up to 88 pounds, so by the time she got the shot she'd gone from 83 to 88 pounds, she'd gained five, lost three, went back up to 88. Even if you say that was somehow Crohn's disease, which it wasn't, and Dr. Warner admits that there are things that can cause weight loss, he admits that it's subtle medicine, but on the basis of speculation, the special master was willing to say that was the onset. Nothing in the record from any doctor to say that this was the onset of the disease. Are experts contradicting it? So what are we at in the battle of the experts? Are we now looking at expert credibility? I thought that was something that was also rejected in Andrew, but apparently not. If it's expert credibility as to what three pounds of weight loss means, then I think we have real problems. But put that aside. What happened after the first vaccination was totally different. If having nausea, diarrhea, vomiting, severe weight loss, and now we're talking about 14 pounds of weight loss, we're talking about big-time weight loss, if you're saying all those aren't a significant aggravation, that's simply ignoring the facts. Clearly, she had the vaccination. Clearly, according to the medical records, she now became totally symptomatic to the point where she was diagnosed. The government's expert says, but it didn't occur after the second one. The reason it didn't occur after the second one was explained by Dr. Blondie, because she was on prednisone. She was on high doses of prednisone. Which can kill most anyone. This is an immune-mediated disease. If you're on high doses of prednisone, you're not going to have the inflammatory reactions. It's not going to be there. But after the third one, when she's starting to get better, they've weaned her off now. She no longer is on all this prednisone. After that third shot, boom, she gets it big-time. That is called positive re-challenge. If you look at the Capizano decision. So your argument is that that's at least aggravation? Absolutely significant aggravation. No diarrhea, none of this stuff before, now you've got it afterwards. If that's not significant aggravation where you have to be put on prednisone, then I don't know what significant aggravation is. I fail to see how a healthy child, before the vaccine, goes to a sick child after the vaccine who has to be on prednisone, and that's not significant aggravation. And Dr. Warner's answer to that is, well, that's just the natural course of the disease. But Dr. Warner himself said, if you put ten Crohn's patients in a room, they will all have ten different courses. So how can he say it's the natural course of the disease? He doesn't answer the question. If it's aggravation, how long does it last after the third? It can be acute or it can be chronic. And that goes back to everything we have with vaccines relates to that. It looks at the animal models, everything. You can give one species of animal the same injection as another species. One animal will have an acute reaction like EAN or something, and the other one will have a chronic condition. In her case, after that second whammo, after the third shot when she got really sick, then she continues to have, now she's got scar tissue, now she's got all the things going on that perpetuate and cause Crohn's disease to get worse. And yes, after that, it can be triggered by eating wrong food, it can have all kinds of things can affect the course after it's gotten full-blown like it did. But certainly this was significant. And not only was it significant aggravation, it was positive re-challenge. It happened after two vaccines. And Capozano, the chief special master at the time, special master Golkiewicz, relied on evidence of re-challenge in other injectees. A re-challenge event occurs when a patient who had an adverse reaction to a vaccine suffers worsened symptoms after an additional injection of a vaccine. If that didn't happen here, I don't know what did. If Dr. Blonte isn't the man to talk to that, I don't know who is. What does a petitioner have to do to win in this program? If this program is getting to the point where petitioners cannot win and we cannot appeal because it's based on a factual determination, this was more than a factual determination. This was a special master inserting back in Stephen's requirements and calling it a factual determination because the facts are the facts in this case. The interpretation is what's wrong. And I reserve the balance of my time. Okay. Thank you, Mr. Chairman. Ms. McCall. May it please the court. This case represents a failure of proof. The Pelham case flawed because she first failed to prove that the vaccine caused her bone disease and second, that the vaccine caused any injury at all. The case turned on two fact-based questions. That was, what was the timing of the onset of the Crohn's disease? Did that occur before vaccination? And if it did, that therefore extinguished her causation claim. Unless it was aggravated. Unless it was aggravated. Which is their argument. But the government's position seems to be that it did extinguish any claim if those earlier symptoms were symptoms of Crohn's disease. Is that the government's position? The government's position is that, yes, the earlier symptoms were symptoms of Crohn's disease. Therefore, petitioner could not show that the Crohn's disease was caused by her vaccination. With regard to her second claim, her alternate argument that the vaccine aggravated her injury, the government's position is that the petitioner never showed that her Crohn's disease was really exacerbated after the vaccination. That's really quite circular, isn't it? You have to prove that you had it in the first place in order to make a case for aggravation. Otherwise, you can't make a case for aggravation. Is that what you're saying? Well, we're not subject... It's because petitioner alleged in the second instance that the condition was aggravated by the vaccine that we make any argument at all in terms of aggravation. Our position from the beginning, based on our experts' report, was that the evidence showed that she had Crohn's disease before vaccination. Petitioner then, in his closing brief, argued, well, if the court finds that that's the case, then our alternate argument is that the vaccine aggravated it. And the problem with that argument, as found by the special master and upheld by Judge Miller, was that the petitioner never showed that the symptoms she was experiencing after vaccination were not part of the natural course of her disease. She never showed that she wouldn't have had those symptoms but for the vaccination. But for the doctors, the special master's point was that neither of the doctors said anything about the aggravation issue and therefore... That's correct. ...your argument is failure proof. But the problem is for the doctors. The doctors were being called to prove that she didn't have Crohn's until the vaccination. For them to turn around and say, oh, by the way, it also aggravated her Crohn's disease, the vaccinations, would have been to, at least either directly or indirectly, concede that she did have Crohn's before the vaccination. So that put the doctors in a rather impossible position. They couldn't take the position that she didn't have it until the vaccination and simultaneously take the position that she did have it and it aggravated it. So what were the doctors supposed to say? Well, I understand Your Honor's logic. However, in this case, I do believe that we have an exceptional circumstance, which was pointed out by Judge Miller, which was petitioners were allowed to get a doctor to specifically address the aggravation issue. Yes. Petitioner was allowed to have the record, in essence, reopened to have that evidence come in. So in this situation, the doctor who might at first be looking at the case in terms of causation, and now let me switch gears and have to talk about aggravation, that's not exactly the case here. There was a doctor, Dr. Solney, who was a gastroenterologist, that petitioner was allowed to submit evidence from after hearing. And what happened? And he was asked directly to address, is this aggravation? Did the condition occur before the vaccination? And what did Dr. Solney say? And Dr. Solney didn't answer those questions, even though they were directly asked to him in orders by the special master. Dr. Solney addressed the case first as if the petitioner had received an earlier vaccination that petitioner agreed was an error in the records, that she did not receive that vaccination. Dr. Solney secondly said the symptoms that happened later happened close in time to the vaccine, therefore they suggest aggravation. But what's the government's position that immediately following these two vaccinations, there were these dramatic physiological results? It can't be that the government's position is that these events were pure luck, circumstance, that a healthy child after the first vaccination gets these dramatic consequences and after the third vaccination, recurrence, and that there's no relationship between the vaccination and what happens? That can't be the government's position. Well, to a certain extent, it is, Your Honor. It is our position. How do you justify it? I justify it in two ways. No witness justified that sequence of events. Well, the events, for one thing, the closeness in time between the vaccination and the onset of the dramatic symptoms isn't as close as it may be made to seem. Within a week or two? Well, there is testimony that Petitioner experienced some nausea and cramping within a week or two of the vaccination, but in regard to her first vaccination, the August 1997 vaccination. But it's not until three, practically three months later, two and a half months later to three months in November that she has the dramatic drop in weight and then experiences the bloody stools and the more dramatic symptoms. Well, it takes time to lose weight. Even if you're on a starvation diet, it takes time to lose weight. It does, it does. Your theory is the random flare-up theory. Yes. It's our expert, Dr. Warner, who was the most qualified, as found by the special master, to address the gastrointestinal symptoms and the type of symptoms one with Crohn's disease would experience, testify to, that it is a condition that has a relapsing, remitting course and can have flare-up of symptoms. Petitioner hasn't shown anything to say why the symptoms being close in time to the vaccine have to have been caused by the vaccine. They haven't discounted the fact that this condition has flares and fluctuations in symptoms. And that's our position, is that the second claim of aggravation fails because Petitioner never showed what we expect an adolescent who has onset of Crohn's disease earlier at the time when she has the drop in her growth velocity, not just the absolute weight loss, but the growth velocity. That was the onset of her condition. Petitioner never showed us what would we expect a child, an adolescent, to have later on as a result of the Crohn's disease. You started out saying that this was a fact question. Are you implying by that that our standard of review should be whether there is substantial evidence in the record to support the judgment of the special master and the Court of Federal Claims, or is this a case where we look to see whether the decision is arbitrary and capricious? Both of those standards are part of the APA, in this case the statutory standard for these cases. Which do you think we're applying? I believe that you are applying the arbitrary and capricious standard, whether or not the special master's decision was clearly wrong or wholly implausible. Because the question of whether or not the onset of the condition occurred before vaccination is a pure fact question. What was the evidence? Well, we know the facts. The question is what do the facts mean? Nobody argues about what happened. She was treated regularly. This is correct. Treated by a pediatrician. Yes, that is correct. And what the facts mean was interpreted by the experts in the case. And in this case, Dr. Warner was the one who offered the testimony and the opinion interpreting those facts that was most consistent with the literature. And the special master found his opinion based on his experience in treating Crohn's patients and being the director of the clinic at his hospital in gastroenterology. But he didn't also testify that the later manifestations were, if in fact there was a basis in wherever it is, is this a genetic disease also or an immune? The problem of the record indicates the child was adopted. So there is no genetic information. Is that correct? That was my assumption. I believe that's correct, Dr. Warner. And I don't know if it's known at this stage as to what variation in the DNA affects this disease or not. I imagine that will be determined in the future. So we don't have that kind of evidence. I don't believe we do, Your Honor. So the government's expert in saying that this child had symptoms that could be interpreted as Crohn's disease didn't testify, as I recall, that a series of more dramatic manifestations after the vaccination could not have flowed because of something or other in the hepatitis B vaccine, whether it was the carrier or whatever it is, the active ingredients. I don't believe he did, Your Honor. However, it's not respondents' burden to establish that the vaccine did not cause the injury. It's petitioners' burden to establish that the vaccine did cause the injury. And in this case, we had the underlying condition as an alternate cause. But all you can do is look at the events. The particular internal transformations within the body is science that hasn't yet been developed, apparently. Yes, Your Honor. However, we do need those experts to interpret what those changes might be and when they might occur and what that means for this patient. That's the problem with the petitioner's case. Because you told us we should rely on the government's witness. And it seemed to me that the government's witness did not plug that gap, did not carry the relationship forward. You just said that she may already have had the propensity, not that it could not have been aggravated or anything like that. I'm not sure I understand Your Honor's question. You told us that there was evidence, substantial evidence, based on that which was presented by the government's witness. And I'm asking you to persuade us that that's true. Well, Your Honor, our position is that the petitioner failed to establish evidence, essentially to the contrary of what the respondent's expert espoused, which was that she had this disease already, that what she experienced after the vaccination was the natural course of that disease, was the type of symptoms that you would see in a patient with that disease. And petitioner's evidence failed, and they did not establish that that was not true. They did not establish that without the vaccine, Ms. Locaine would not have experienced these same or similar type symptoms. And that was their burden as the petitioner in this matter. I think this court's statement in white cotton concerning significant aggravation is telling in the sense that there's a statement, the primary difficulty in adjudicating the significant aggravation claims in children with pre-existing conditions is it is very difficult to know at the age when the child is vaccinated what symptoms would have naturally manifested themselves as the child matured, and what symptoms might have remained latent after the vaccination. That's the problem in this case. There's no evidence from petitioner of what we could expect to see from this disease that our experts at the petitioner already had. If we don't require some type of showing of what a progressive disease such as this one would have, then any condition that has a progressive course would be sort of presumptively exacerbated by a vaccination if additional symptoms happen to occur after vaccination. You can say it's pure chance how these symptoms occurred. As far as the record that we have before us shows, yes. No, I don't think any physician said that on either side. I think Dr. Warner, respondent expert, essentially says that these are the type of symptoms you expect in a person with Crohn's disease. He didn't say it was pure chance as to when they occurred in the timeline of the vaccination. He says it's a disease about which very little is known, something like that. He does, and he also says that he can't find any evidence based on his research or his experience linking the symptoms in Crohn's disease to hepatitis B vaccine. His patients were routinely administered hepatitis B vaccine without any exacerbation. So based on his experience, he found that the symptoms that she experienced were the natural course of her conditions. Okay. Thank you, Ms. McCall. Mr. Shoemaker, you have a little time left. Thank you, Your Honor. Let me just address a little bit about, I think, what Judge Wallach asked earlier. After the hearing, when it became obvious to us from the hearing that the special master was looking at this whole issue of whether or not this weight loss was an earlier onset, after the hearing, we filed at number 101 on August 28, 2009, we filed an expert report from Dr. Blonte where he concluded that if he still didn't agree that it started earlier... Not 2009. Yes. 2009? Yes. This was after the hearing. So it's number 101 in the docket. He filed a report saying if there was an earlier onset, and I don't agree there is, then this was certainly a significant aggravation. So he has said that in the record. Then we said, okay, there's been a complaint that he's an immunologist. Obviously he knows the most about causations because it's an immune-mediated disease, but they're saying they have a gastroenterologist, so we got Dr. Solney to file a report. He filed a report which is number 104 in the docket. And that's the one the special master rejected because of the date. Yes. He had looked in the record and saw that there was a vaccination record in the record, but everybody agreed that that probably hadn't taken place. So he was saying, well, if there was any earlier weight loss, it could have been related to that vaccine. But since we couldn't prove that vaccine, he said, then he's filed a subsequent report, which is at number 110, where he says, I still don't think there was an earlier onset, but I think the vaccines caused the Crohn's disease. To answer your question on genetics, Your Honor, thankfully, vaccine reactions are rare. I'm a vaccine advocate. I had a sister who had polio the year I was born because there were no polio vaccines in 1948. Vaccine reactions are rare. The reason why some kids react to a vaccine whereas the vast majority do not is based on genetics, and it's based on the status of the child's immune system at the time they're vaccinated. We know that. If everybody's immune system were the same, it would be like Yogi Berra. In a perfect world, it wouldn't be. We'd all either react or we wouldn't react. The public health data are clear that there's an irreducible percentage of people who have adverse reactions to these vaccines. Let me ask you a question on damages. Perhaps you can help me. Yes, sir. I'm trying to recollect the cases I've sat on over the years in this area. Let's assume, hypothetically, that the only issue that eventually gets litigated, finally, is the question of aggravation. Let's assume there is found to be substantial aggravation. How are the damages assessed in such a case? In this case, I think they would be easy to assess because there was no evidence prior to vaccinations of any of the typical symptoms of Crohn's disease. No diarrhea, no bloody stools, all the things that we know. Let's assume we accept that she had Crohn's earlier, but now it's a question of aggravation by the vaccine. Then how do you assess the damages? You know, that's an interesting question. It may very well be that the literature that Dr. Warner is relying upon doesn't tell us that a person, these kids, had Crohn's disease earlier. It may tell us what kids are at a propensity to develop Crohn's disease. I mean, to lose... You're not answering my question. I'm taking as a given that she had Crohn's disease before the vaccination for hypothetical purposes, but that I'm also taking as a given the vaccine aggravated her Crohn's disease. This is a hypothetical question, and I want to know how would you then go about measuring the damages caused by the vaccine in the context of aggravation only? We would argue in that case, Your Honor, that all of the damages from her Crohn's disease are related to the vaccination, and we would argue that anything that speculates that she might have had some reactions without the vaccines is that pure speculation. As Dr. Warner said, there... What would you include in your damages claim? Oh, what we're entitled to in damages, Your Honor, is up to $250,000 of payment suffering, past and future unreimbursable expenses, so there's no liens for insurance. For instance, the only lien is Medicaid, and lost earnings. So you would argue... In this case, there wouldn't be lost earnings if she's working, so I mean... You would argue all of those damages can be argued for in the context of an aggravation case. Oh, yes, and they are. Typically, that's... That's what I don't know. That's what I'm asking. Yes, I'm sorry. That's a narrow question I was asking. I'm sorry. They're typically argued in cases like that. Yes. Thank you. Thank you. Okay. Any other questions? Okay. I look forward to post-call's result in favor of petitioners. Thank you, Mr. Shoemaker. Thank you. The case is taken into submission. That concludes the argument cases this morning. All rise.